UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
MAX FELIX,                              )
                                        )
              Plaintiff,                )
                                        )
v.                                      )        Civil Action No. 12-10997-IT
                                        )
KEVIN DONNELLY, et al.,                 )
                                        )
              Defendants.               )
_____ )

REPORT AND RECOMMENDATION ON THE DEFENDANTS'
 RENEWED MOTION FOR SUMMARY JUDGMENT
[Docket No. 122]

March 28, 2017

Boal, M.J.

       Pro se plaintiff Max Felix alleges that Defendants Town of Randolph and Randolph

Police Officers Kevin Donnelly, Edward O'Leary, and Paul Porter violated his civil rights.  He

also alleges claims for malicious prosecution, intentional infliction of emotional distress, failure

to adequately train officers, defamation, and invasion of privacy.  On September 30, 2016, the

District Court denied the Defendants' motion for summary judgment without prejudice and

allowed them 21 days to file a renewed motion.  Docket No. 120.  The Defendants filed such a

motion on October 19, 2016.  Docket No. 122.[1]  For the following reasons, this Court

recommends that the District Court Judge assigned to this case grant in part and deny in part the

Defendants' motion for summary judgment.

_____

[1] On November 30, 2012, the District Court referred the case to the undersigned for full pretrial
management, including report and recommendation on dispositive motions.  Docket No. 43.

I.    FACTS[1]

Defendant Donnelly avers that he knew Felix for a number of years prior to the 2009 and 2010 incidents giving rise to this action.[2]  Felix denies that Donnelly knew him prior to the 2009 incident.[3]

On March 11, 2009, Donnelly was on duty and responded to an armed robbery at a Burger King in Randolph, Massachusetts.[4]  As part of the investigation into the robbery, Donnelly set up a roadblock at North Street and Cottage Street in order to check vehicles.[5] While he was checking vehicles, he stopped an SUV with two black male occupants, the driver of which he recognized as Felix.[6]  He recognized Fran Matthieu as the passenger.[7]  Both men appeared to be out of breath and extremely nervous.[8]  Donnelly directed them to pull the vehicle to the side of the road.[9]  Felix pulled out almost running over Donnelly's right foot and then took

---

[1]  Because this case is before the Court on a motion for summary judgment, the Court sets out any properly disputed facts in the light most favorable to the non-moving party.  See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997).  The facts are derived from the Defendants' Concise Statement of Material Facts of Record as to Which the Moving Party Contends There Is No Genuine Issue to Be Tried (Docket No. 110) ("Def. SOF") and Plaintiff's Concise Statement of Material Facts of Record as to Which It is Contended That There Exist A Genuine Issue to Be Tried (Docket No. 116) ("Pl. Resp.").

[2] Def. SOF ¶ 1.

[3] Pl. Resp. ¶ 9; Felix Aff. at ¶ 7.

[4] Def. SOF ¶ 1.

[5] Id.

[6] Id.

[7] Id.

[8] Id.

[9] Id.

off at a high rate of speed.[10]  Felix shut off his lights and pulled off onto Trim Way.[11]  Both occupants abandoned the vehicle and fled on foot.[12]

Based on the men's behavior and the proximity to the location of the Burger King robbery, Donnelly suspected that they had been involved in the robbery.[13]  The vehicle was registered to Enterprise Rent a Car and rented by Felix.[14]  Donnelly checked on the computer system and found a photograph of Felix and recognized him as the operator of the car.[15]  Mathieu admitted to being the passenger in the SUV but would not identify the driver.[16]  He said that Felix, who was his best friend, was not the operator but someone else who looked like Felix.[17]  He would not explain how he happened to be picked up by someone else driving a car being rented by Felix.[18]

Felix denies having anything to do with this incident.[19]  He avers that he was driving a

---

[10] Id.

[11] Id.

[12] Id.

[13] Id.

[14] Id.

[15] Affidavit of Kevin Donnelly (Docket No. 110-12) ("Donnelly Aff.") at ¶ 5.

[16] Def. SOF ¶ 2.

[17] Id.

[18] Id.

[19] Pl. Resp. ¶ 1.

four door sedan rented from Hertz.[20]  He also alleges that, on the night of the incident, he was at

bar with a friend.[21]  According to Felix, he had also rented a car from Enterprise for a friend,

who told him that the car had been stolen.[22]  When Felix went to the Randolph police station to

report the car stolen the next day, he was arrested for filing a false police report.[23]

Felix was charged with numerous motor vehicle violations, including failure to stop for a

police officer and operating so as to endanger.[24]  He was also charged with operating without a

license and assault by means of a dangerous weapon, to wit, a motor vehicle.[25]  Felix was not

charged with any crimes relating to the Burger King Robbery.[26]  Indeed, no one has been

charged.[27]

With respect to the unlicensed operation charge, the Defendants maintain that a computer

search showed that a Massachusetts license had been cancelled.[28]  The State of Georgia

Department of Driver Services indicates that Felix has an address in Lawrenceville, Georgia and

---

[20] Affidavit of Max Felix (Docket No. 116-6) ("Felix Aff.") at ¶ 1.

[21] Felix Aff. at ¶ 5.  Felix's friend testified that he met Felix at a bar around 9:25 or 9:30 p.m. and was with him until around 10:20 p.m.  See Docket No. 116-7 at 11.

[22] Id. at ¶ 1.

[23] Felix Aff. ¶ 1; Docket No. 116-7 at 14; Def. SOF ¶ 2.

[24] Def. SOF ¶ 1.

[25] Id.

[26] Id.

[27] Id.

[28] Def. SOF ¶ 1; see also Docket No. 110-5 at 4

a Class A commercial license, originally issued on August 30, 2007.[29]  Felix denies that he was

unlicensed at the time of the incident.[30]  He maintains that he received a commercial license in

Massachusetts in 2007 and transferred that license to Georgia later that year.[31]  Felix denies

living in Massachusetts.[32]

On March 12, 2009, probable cause was found by the Magistrate of the Quincy District

Court on the application for a criminal complaint for the charges resulting in the incident on

March 11, 2009 for assault by means of a dangerous weapon, failing to stop for a police officer

and operating to endanger.[33]  After a jury trial on May 9-10, 2012, Felix was found not guilty of

these charges.[34]  The charge of unlicensed operation was dismissed at the request of the

Commonwealth.[35]

On March 13, 2009, the Brockton Enterprise published a story regarding the Burger King

robbery.[36]  In relevant part, the article stated:

> Police stopped a car with two men inside on North Street shortly after the
> robbery.  As officers approached it, the driver sped off.  The car stopped
> after going a short distance, and the two men inside ran into a wooded area.

---

[29] Def. SOF ¶ 3; see also Docket No. 110-7.

[30] Pl. Resp. ¶ 2; Felix Aff. ¶ 2.

[31] Felix Aff. ¶ 2.

[32] See id. at ¶ 6.

[33] Def. SOF ¶ 4.

[34] Id. at ¶ 5.

[35] Id.

[36] Def. SOF ¶ 16; Docket No. 110-2.

Max Felix, 25, of 1499 Station Drive, Larwenceville [sic], Ga., was arrested Thursday.

Felix has lived at various addresses in Randolph, the chief said.

He is charged with assault and battery with a dangerous weapon for attempting to hit patrol officer Kevin Donnelly while fleeing, Porter said. Other charges include operating a motor vehicle to endanger, failure to stop for a police officer and operating to endanger.  He was arraigned Thursday in Quincy District Court.

Porter said Felix had not been charged in the Burger King robbery.

The two men were in a rental car, and investigators had not found anything linking them to the Burger King robbery, Porter said.[37]

There was also an article on the Town of Randolph website, entitled, "Burger King Armed Robbery," which stated:

Regarding the short pursuit mentioned in my previous e-mail concerning the Burger King armed robbery, we have arrested the operator of the rental car.  Hi [sic] is identified a Max Felix, age 25 of 1499 Station Drive in Lawrenceville Georgia.  Although he gives a Georgia address he is well known to Randolph Police and has lived a [sic] various addresses in Randolph. He is being arraigned this afternoon at Quincy District Court. We are requesting bail based on his failing to stop last night and the out of state address he gives.  He was charged with assault by means of a dangerous weapon to wit an automobile.  He tried to strike Officer Kevin Donnelly with the car when fleeing, Failure to stop for a Police Officer, Operating a motor vehicle so as to endanger lives, and operating without a license.  He was NOT charged with the Burger King armed robbery.  That incident is still under investigation.[38]

Felix avers that he received phone calls from friends and family who read the Enterprise Newspaper article, who expressed shock and disappointment about Felix's alleged involvement in dangerous and illegal activities.[39]  He feared that a potential employer would Google his name

---

[37] Docket No. 110-2; Def. SOF ¶ 16.

[38] Docket No. 110-3; Def. SOF ¶ 17.

[39] Felix Aff. at ¶ 4.

and read the articles.[40]  He maintains the articles were false and damaged his reputation as a

skilled commercial driver.[41]  Defendants maintain that these articles could not have been

detrimental to Felix's career because the last time he worked as a commercial driver was in

2008, almost one year prior to the incident.[42]  However, Felix also testified during his deposition

that he had been looking for a job.[43]

On May 11, 2011, Donnelly stopped a car with a broken driver's side tail light.[44]  The

operator of the vehicle was Felix.[45]  Felix handed Donnelly a Georgia driver's license.[46]

Defendants maintain that Felix was uncooperative and would not answer any questions regarding

the owner of the car or his address in Massachusetts.[47]  According to Defendants, Felix had been

seen driving around Randolph, Massachusetts in the prior months.[48]  Donnelly believed that

Felix was residing in Massachusetts but driving on an out of state driver's license.[49]  Donnelly

told Felix that he was being cited for operating without a license and for an equipment violation

_____

[40] Id.

[41] Id.

[42] Def. SOF ¶ 15.

[43] Docket No. 110-1 at 3.

[44] Def. SOF ¶ 6.

[45] Id.

[46] Id.

[47] Id.

[48] Id.

[49] Id.

for the broken tail light.[50]  Felix got out of the car and walked away.[51]  A citation was mailed to Felix.[52]  Donnelly states that, as part of the investigation, he contacted the police department in Lawrenceville, Georgia and was told that Felix's family lives there and that Felix visited occasionally.[53]

Felix maintains that he could not understand why Donnelly was asking questions regarding the owner of the car.[54] He also maintains that he did answer questions regarding where he lived but Donnelly called him a liar.[55]  Again, Felix denies living in Massachusetts and states that he lived in Lawrenceville, Georgia.[56]  He states that Donnelly assumed that he lived in Massachusetts because Felix had to go to court in Massachusetts on an almost monthly basis.[57]

A complaint was issued by the Quincy District Court on the violations of operating without a license and defective equipment.[58]  After a bench trial on November 28, 2011, Felix was found not guilty of unlicensed operation but found responsible for the defective equipment.[59]

---

[50] Donnelly Aff. at ¶ 13.

[51] Id.

[52] Id.

[53] Def. SOF ¶ 6.

[54] Felix Aff. at ¶ 9.

[55] Id.

[56] Felix Aff. at ¶ 10.

[57] Felix Aff. at ¶ 6.

[58] Def. SOF ¶ 7.

[59] Def. SOF ¶ 8.

Donnelly is a trained police officer who successfully completed the Massachusetts Police Academy in 1999 and attends yearly in-service training.[60]  He has a bachelor's degree in sociology/criminology and a master's degree in criminal justice administration.[61]  He is trained in all aspects of investigation.[62]

Felix filed a civilian complaint against Donnelly.[63]  The Defendants maintain that the matter was investigated by Lt. Edward T. O'Leary and found to be unfounded.[64]  O'Leary responded to the complaint by a letter dated June 22, 2010.[65]  Felix alleges that his complaints were disregarded and that O'Leary was "very condescending and aggressive."[66]

II.    PRIOR PROCEEDINGS

On May 21, 2012, Felix filed his Complaint in Massachusetts Superior Court.  See Docket No. 5 at 12.  On June 13, 2012, the Defendants removed the case to this Court.  Docket No. 1.

Defendants Town of Randolph, Donnelly, O'Leary and Porter filed an answer on November 20, 2012.  Docket No. 37.  On November 29, 2012, the Town of Randolph filed a motion for judgment on the pleadings.  Docket No. 38.  Also on November 29, 2012, the

---

[60] Def. SOF ¶ 14.  Felix disputes that Donnelly has been properly trained, but the cited materials do not contradict Donnelly's statements.  Pl. Resp. ¶ 27.

[61] Id.

[62] Id.

[63] Def. SOF ¶ 2; Felix Aff. at ¶ 3.

[64] Def. SOF ¶ 2.

[65] Id.; Docket No. 110-6.

[66] Felix Aff. at ¶ 3.

Randolph Police Department filed a motion to dismiss.  Docket No. 40.  On May 28, 2013, the

District Court adopted this Court's recommendation that it grant the motions.  Docket Nos. 52,

56.  The District Court dismissed all of the claims against the Randolph Police Department and

the claims for violations of the Massachusetts Civil Rights Act ("MCRA"), conspiracy,

intentional infliction of emotional distress, malicious prosecution, defamation, and invasion of

privacy against the Town of Randolph.  Id.  The following claims survived against the Town of

Randolph: any claims of federal civil rights violations under Count One and claims for failure to

adequately train police officers under Count Five.  Id.

On July 6, 2015, Felix filed a motion for summary judgment.  Docket No. 107.

Defendants also filed a motion for summary judgment on July 13, 2015.  Docket No. 108.

Defendants filed an opposition to Felix's motion for summary judgment on July 13, 2015.

Docket No. 111.

On February 19, 2016, this Court recommended that the District Court deny Felix's

motion for summary judgment and grant Defendants' motion for summary judgment.  Docket

No. 117.  Felix filed timely objections.  Docket No. 118.  The District Court found that the

evidence proffered by the parties demonstrated a number of disputes of fact and denied Felix's

motion for summary judgment.  Docket No. 119.

This Court also recommended that the District Court grant the Defendants' motion for

summary judgment.  Docket No. 117.  On September 30, 2016, the District Court issued a

memorandum and order on Defendants' motions for summary judgment declining to adopt this

Court's recommendations.  Docket No. 120.  The District Court found a number of issues of fact,

including:

- Contrary to Defendants' assertions, a jury could find that Felix was not the driver of the car that drove away from the roadblock on March 11, 2009.  A jury could also find that Officer Donnelly was not that familiar with Felix before the events in question, and did not identify Felix on March 11, 2009, from any prior interactions as he later claimed.  A jury could find instead that, before Donnelly "recognized" Felix as the driver of the car, Donnelly first learned that the car had been rented in Felix's name and that the car had been abandoned near the home of Felix's friend.

- Contrary to Defendants' assertions, a jury could find that Felix had a valid Georgia driver's license commencing in 2007 and no Massachusetts residence after 2007, and that Officer Donnelly did not have cause to criminally charge Felix with operating a vehicle without a license in 2009 and 2010, and no basis for having the vehicle towed that Felix was driving in 2010.

- A jury could find that Donnelly testified untruthfully about Felix's license and address and about Officer Donnelly's prior encounters with Felix in the 2011 and 2012 proceedings described in paragraphs 9-13 of the Defendants' statement of material facts.

Docket No. 120 at 2.

The District Court observed, however, that whether those issues of fact were material was not entirely clear and that Defendants had failed to address that issue.  Docket No. 120 at 3. Rather, they instead presented their own version of events as "undisputed material facts."  Id. Nevertheless, the Court observed that "if Defendants are entitled to judgment as a matter of law on some or all of Felix's claims even if the facts are found in Felix's favor, determining such facts as trial will not resolve the case.  Instead, the legal issues will still need to be confronted."

Id.  Accordingly, the District Court allowed the Defendants 21 days to file a renewed motion for summary judgment.  Id.  The Court ordered that any such motion "shall be limited to the evidentiary record previously submitted in connection with the initial motions for summary judgment.  Any such motion shall seek to demonstrate that Defendants are entitled to judgment as a matter of law without asking the Court to resolve factual disputes in Defendants' favor."  Id.  The District Court also afforded Felix the opportunity to request appointment of pro bono counsel, which he did not do.  Id. at 3.

The Defendants filed a renewed motion for summary judgment on October 19, 2016.  Docket No. 122.  Felix filed an opposition on November 7, 2016.  Docket No. 124.

III.   ANALYSIS

The Defendants failed to heed the District Court's instructions.  They have not, as instructed, sought to show that they are entitled to judgment as a matter of law with respect to Felix's claims despite the disputed facts of record.  Nor have they argued that the facts highlighted by Judge Talwani are immaterial.  Rather, they have expanded upon their argument that they are entitled to qualified immunity.  Nevertheless, the Court finds that they are entitled to judgment as a matter of law with respect to Felix's claims for violations of the Massachusetts Civil Rights Act, conspiracy to violate civil rights, intentional infliction of emotional distress, failure to adequately train, defamation, and invasion of privacy.  Issues of fact preclude summary judgment on Felix's Section 1983 and malicious prosecution claims.

A.   Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B.    Section 1983

Defendants have failed to show that they are entitled to judgment as a matter of law on Felix's Section 1983 claims. Felix maintains that his March 2009 arrest as well as the May 2010 charges for unlicensed operation violated his constitutional rights. The Court previously found that Felix's claims must fail because there was no dispute that Donnelly had probable cause for both the March 2009 arrest and the May 2010 charges. See Docket No. 117 at 13-16. The issue

is a close one.  The Court must construe the facts in the light most favorable to Felix.  In doing

so, the District Court explained its view that under that standard there was a genuine dispute as to

certain facts.  She then gave the Defendants the opportunity to explain that those facts were not

material or otherwise to seek judgment as a matter of law.  Given the Defendants' failure to show

that any factual disputes regarding these incidents are immaterial, the Court recommends that the

Court deny Defendants' motion for summary judgment with respect to Felix's Section 1983

claims as they relate to Donnelly[67] and the Town of Randolph.[68]

      C.    <u>Qualified Immunity</u>

Defendants argue that they are nevertheless entitled to qualified immunity.  Docket No.

123 at 8-10.  The qualified immunity doctrine provides public officials an immunity from suit

and not a mere defense to liability.  <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir. 2009).

A court must perform a two-step analysis in determining qualified immunity.  <u>Id.</u> at 268-269.  A

court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of

a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the

defendants' alleged violation.  <u>Id.</u>  A right is "clearly established" if at the time of the alleged

violation, the contours of the right were "sufficiently clear that a reasonable official would

---

[67] "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, have violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Id.</u> at 677.  Felix has not alleged, let alone provided any evidence, that defendants O'Leary and Porter participated in any of the actions giving rise to his Section 1983 claim. Therefore, the Court recommends that the District Court dismiss the Section 1983 claims against O'Leary and Porter.

[68] The Town has not moved for summary judgment on <u>Monell</u> grounds.  <u>See</u> <u>Monell v. Dept. of Social Servs. of City of New York</u>, 436 U.S. 658, 692 (1978).

understand that what he is doing violates that right." Id. at 269 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  Qualified immunity is ordinarily a question of law for the court. Sorenti v. Doyle, No. 11-10753-53-JLT, 2013 WL 1403489, at *4 (D. Mass. Apr. 4, 2013).  If, however, a determination of qualified immunity hinges on a disputed material fact, the factual dispute must be resolved by the jury and summary judgment is inappropriate.  Id.

This Court has found that there exists a genuine dispute of material fact as to whether Donnelly had probable cause to arrest Felix in 2009 and to bring charges in 2010.  Resolution of these factual disputes is a prerequisite to determining qualified immunity.  Accordingly, this Court declines to recommend the dismissal of Felix's Section 1983 claim on the grounds of qualified immunity.

      D.       Massachusetts Civil Rights Act

The MCRA provides, in relevant part:

> Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured.

Mass. Gen. Laws. ch. 12, § 11H.  The MCRA authorizes civil actions by any person subjected to an interference of rights as described in Section 11H.  Mass. Gen. Laws. ch. 12 § 11I.  To prevail, Felix "must prove that (1) [his] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'"  Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989) (quoting Mass. Gen. Laws ch. 12, § 11H). "The MCRA is coextensive with 42 U.S.C. §

1983, except that the Federal statute requires State action whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation or coercion." Sietins v. Joseph, 238 F. Supp. 2d 366, 377-78 (D. Mass. 2003) (quotations and citations omitted). This additional requirement distinguishes valid claims under the MCRA from those under Section 1983.

The MCRA "was not intended to create, nor may it be construed to establish, a vast constitutional tort." Mancuso v. MIAA, Inc., 453 Mass. 116, 131-132 (2009) (internal quotation marks and citation omitted). "It is for this reason that the Legislature explicitly limited the Act's remedy to situations where the derogation of secured rights occurs by threats, intimidation, or coercion." Id. at 132. "A direct violation of civil rights is not, without a showing of coercive behavior, actionable." Orwat v. Maloney, 360 F. Supp. 2d 146, 164 (D. Mass. 2005) (quotation omitted).

For purposes of the MCRA, "a 'threat' involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. 'Coercion' involves the application to another of such force, either physical or moral, as to constrain a person to do against his will something he would not otherwise have done." Farrah v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010) (quoting Planned Parenthood League of Massachusetts v. Blake, 417 Mass. 467, 474 (1994)).

Here, although Felix may have provided sufficient evidence to show a violation of a constitutional right, the record is devoid of any evidence of threats, intimidation or coercion by the Defendants. Accordingly, this Court recommends that the District Judge grant summary judgment in favor of the individual Defendants on Felix's MCRA claim.

16

       E.     <u>Conspiracy To Violate Civil Rights</u>

Count Two of the complaint brings a claim for "conspiracy to violate civil rights." Docket No. 1-2 at 8.  Felix does not make clear, either in the complaint or in his summary judgment papers, whether he is bringing a conspiracy claim under Section 1983, Section 1985 or state law.  The Court will interpret Felix's claims as arising under Section 1983 because his civil right violation claims arise under that statute and he does not appear to allege discrimination as would be required under a Section 1985 claim.

A Section 1983 conspiracy claim is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."  <u>Estate of Bennett v. Wainwright</u>, 548 F.3d 155, 178 (1st Cir. 2008) (abrogated in part on other grounds by <u>Maldonado v. Fontanes</u>, 568 F.3d 263) (citation omitted).  A plaintiff must establish "not only a conspiratorial agreement but also an actual abridgment of some federally-secured right."  <u>Nieves v. McSweeney</u>, 241 F.3d 46, 53 (1st Cir. 2001) (citation omitted).  Further, the plaintiff must specify the specific constitutional right infringed.

While Felix may have provided sufficient evidence to survive a motion for summary judgment on his claim that his constitutional rights were violated, he has presented no evidence of an agreement between the Defendants from which a reasonable jury could infer a conspiracy among them to inflict an injury upon Felix.  Accordingly, the Court recommends that the District Court grant summary judgment in favor of the Defendants on the conspiracy claim.

F.     Intentional Infliction Of Emotional Distress

This Court previously recommended that the District Court grant summary judgment in favor of the Defendants on Felix's intentional infliction of emotional distress.  Docket No. 117 at 19-20.  The Court so concluded because, among other things, in order to prevail on this claim, Felix must show behavior that is "extreme and outrageous . . . beyond all possible bounds of decency and . . . utterly intolerable in a civilized society."  Conley v. Romeri, 60 Mass. App. Ct. 799, 803 (2004).  As a matter of law, conduct by police officers in carrying out their obligations as law enforcement officials cannot be deemed extreme and outrageous.  See, e.g., Lund v. Henderson, 22 F. Supp. 3d 94, 106 (D. Mass. 2014) (unlawful arrest alone does not rise to the level of extreme and outrageous conduct); Aguoji v. Harvard Univ., 77 Mass. App. Ct. 1115 (2010) (unpublished) ("The arrest of a person upon the basis of probable cause to believe that he has committed, or is committing, a criminal offense does not constitute 'extreme or outrageous' conduct, 'beyond all possible bounds of decency and utterly intolerable in a civilized community.'"); Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) (finding that even arrest made without probable cause would not rise to the level of extreme and outrageous conduct).  The individual Defendants are therefore entitled to summary judgment on this claim.

G.     Malicious Prosecution

Under Massachusetts law, the elements of malicious prosecution are "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice."  Nieves, 241 F.3d at 53. In its prior report and recommendation, this Court recommended dismissal of this claim because it found that Felix had not provided sufficient evidence to show that Donnelly lacked probable

18

cause for the March 2009 arrest or the May 2010 charges.  Docket No. 117 at 20- 21.  Given

Judge Talwani's decision and the Defendants' failure to file a memorandum in accordance with

that decision, the Court has reconsidered this finding.  Accordingly, Donnelly is not entitled to

summary judgment on Felix's malicious prosecution claim.

     H.    <u>Failure To Adequately Train And/Or Supervise Officers</u>

Count Five of the complaint alleges a claim for "failure to adequately train officer,"

whereby Felix alleges that the Defendants failed to adequately supervise and discipline officers.

Docket No. 1-2 at 9.  "The liability criteria for 'failure to train' claims are exceptionally

stringent."  <u>Hayden v. Grayson</u>, 134 F.3d 449, 456 (1st Cir. 1998) (citing <u>City of Canton v.

Harris</u>, 489 U.S. 378, 388-89 (1989)).  "Only if the failure to train 'amounts to *deliberate

indifference* to the rights of persons with whom the police come into contact,' and is 'closely

related' to, or 'the moving force' behind, the constitutional injury, can the claim against the

municipality prevail."  <u>Id.</u>  (emphasis in original; citation omitted).  A single incident of

misconduct, without more, cannot provide the basis for municipal liability under a failure to train

theory.  <u>Buchanan v. Maine</u>, 417 F. Supp. 2d 45, 66 (D. Me. 2006) (citations omitted).

To establish deliberate indifference, Felix needs to present evidence that (1) the Town of

Randolph knew when it hired Donnelly that the risk of Fourth Amendment violations arising and

recurring in their dealings with individuals like Felix was "so obvious" that its failure to train

him likely would result in continued violations or (2) even though the risk of recurring

constitutional violations was not "so obvious", the Town subsequently learned of a serious

recurrence, yet took no action to provide the necessary training.  <u>See</u> <u>Hayden</u>, 134 F.3d at 456

(citation omitted).

Here, Felix has not provided any evidence that when Donnelly was hired there was a need for increased training or of any recurrence that required the Town to provide its officers with increased training. Felix appears to point only to his own arrest as a basis for municipal liability. That is not enough. Therefore, his claim for failure to train also fails.

Similarly, absent participation in the challenged conduct, a supervisor may be held liable for constitutional violations only if "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmative[ly] link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence [of the supervisor] amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (citation omitted). The plaintiff must show causation linking the supervisor's conduct to the subordinate's violative act or omission. Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 582 (1st Cir. 1994) (citations omitted). Causation may be satisfied if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. Id. (citations omitted). Causation may also be satisfied if there is a long history of widespread abuse sufficient to alert a supervisor to ongoing violations and the supervisor fails to take corrective action. Id. (citations omitted).

Felix has pointed to no facts affirmatively linking O'Leary or Porter to Donnelly's decision to arrest or charge him. He has pointed to no evidence that O'Leary or Porter were involved in the events at issue in this case. Absent any factual basis to support a claim that O'Leary or Porter's conduct constituted supervisory encouragement, condonation or gross negligence amounting to deliberate indifference to Felix's constitutional rights, Felix has failed to create a genuine issue of fact regarding supervisory liability. Accordingly, O'Leary and Porter are entitled to summary judgment on Count Five of the Complaint.

I.      Defamation

Felix also brings a claim for defamation against the Defendants[69] based on the Brockton

Enterprise article and the article on the Town's website regarding the Burger King robbery and

Felix's arrest.  To prevail on a defamation claim under Massachusetts law, "a plaintiff must show

that the defendant was at fault for the publication of a false statement of and concerning the

plaintiff which was capable of damaging his or her reputation in the community, and which

either caused economic loss or is actionable without proof of economic loss."  Damon v. Moore,

520 F.3d 98, 103 (1st Cir. 2008) (internal quotation marks and citation omitted).

Defendants appear to argue that Felix has failed to prove an economic loss.  See Docket

No. 109 at 17-18.  They point out that Felix alleges in his complaint that the alleged defamation

was detrimental to his career as a commercial driver, but he testified at his deposition that the last

time he worked as a commercial driver was in 2008, one year before the March 2009 arrest.  Id.

However, the imputation of a crime is defamatory per se, requiring no proof of special damages.

Phelan v. May Dept. Stores Co., 443 Mass. 52, 56 (2004) (citation omitted).

Nevertheless, Felix's defamation claim fails as a matter of law.  "The lodestar of

Massachusetts defamation law is the axiom that truth is an absolute defense to defamation."

Noonan v. Staples, Inc., 707 F. Supp. 2d 85, 90 (D. Mass. 2010) (citation omitted).  "Thus, if a

statement is 'substantially true,' it cannot be defamatory."  Id. (citing Reilly v. Assoc. Press, 59

Mass. App. Ct. 764, 770 (2003)).

---

[69] As with all of his other claims, Felix does not specify each of the individual Defendant's
conduct with respect to each claim.  The statements in the Brockton Enterprise article are
attributed to Defendant Porter.  Docket No. 110-2.  There is no evidence that Donnelly or
O'Leary made any of the statements in either article.  For that reason alone, Donnelly and
O'Leary are entitled to summary judgment in their favor on the defamation claim.

The statements in both articles are substantially true.  The Brockton Enterprise article reported that shortly after the Burger King robbery, police stopped a car with two men inside on North Street.  Docket No. 110-2.  It also reported that as officers approached, the car sped off. Id.  In addition, the article states that Felix was arrested as the driver of the car that sped off and that he was charged with a number of crimes.  Id.  The article specifies that Felix was not charged in the Burger King robbery and that investigators "had not found anything linking them to the Burger King robbery."  Id.

Similarly, the Town of Randolph's website reported that Felix had been arrested for the incident with the rental car and listed the charges against him.  Docket No. 110-3.  It also stated that Felix was not charged with the Burger King robbery, which still under investigation.  Id. While Felix disputes that he was in fact the individual driving the rental car, there is no dispute about any of the facts reported in either article as stated.  That Felix was eventually acquitted (or that Donnelly may not have had probable cause to arrest him) does not change the fact that he was arrested and charged as stated in the articles.  The articles also clarify that he was not charged with the Burger King robbery.  Accordingly, the Court recommends that the District Court grant summary judgment in favor of the Defendants on the defamation claim.

J.     Invasion Of Privacy

Finally, Felix alleges invasion of privacy in violation of M.G.L. c. 214, § 1B ("Section 1B").  Section 1B provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."  M.G.L. c. 214, § 1B.  "Section 1B protects people from 'disclosure of facts . . . that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest.'"  Dasey v. Anderson, 304 F.3d 148, 154 (1st Cir. 2002) (citations omitted).  Massachusetts does not recognize a cause of action for false light invasion of

privacy.[70] <u>Id.</u>  Rather, Section 1B "is typically invoked to remedy 'the gathering and dissemination of information which the plaintiffs contended was private." <u>Id.</u> (citing <u>Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 409 Mass. 514 (1991)).

Neither the complaint nor Felix's summary judgment papers identify any personal or private facts about him that were either gathered or disseminated by any of the Defendants.  To the extent that Felix is arguing that disclosure of the facts surrounding his arrest violated his privacy, such a claim is without merit.  "A person's arrest must be recorded by the police, and that record is public information." <u>Jones v. Taibbi</u>, 400 Mass. 786, 801 (1987).  Accordingly, Felix's invasion of privacy claim also fails.

## IV.    <u>RECOMMENDATION</u>

For the reasons stated herein, this Court recommends to the District Judge to whom this case is assigned that she grant in part and deny in part the Defendants' renewed motion for summary judgment.  Specifically, the Court recommends that the Court enter judgment in favor of Porter and O'Leary on Felix's Section 1983 claims and in favor of Donnelly, Porter and O'Leary on Felix's claims for MCRA violations, conspiracy to violate civil rights, intentional

---

[70] Under the tort of false light invasion of privacy:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

<u>Howard v. Antilla</u>, 294 F.3d 244, 248 (1st Cir. 2002) (quoting Restatement (Second) of Torts § 652E (1977)).

inflction of emotional distress, failure to adequately train, defamation, and invasion of privacy. Based on those recommendations, the following claims would survive the motion for summary judgment: the Section 1983 claim against Donelly and the Town of Randolph and the malicious prosecution claim against Donnelly.

V.     REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge